BOYER *v.* RHINEHART.

(*City Court of Brooklyn, General Term.* January 25, 1892.)

1. SECONDARY EVIDENCE—LETTER-PRESS COPIES—NOTICE TO PRODUCE.
   On the question whether or not a contract for the erection of an ice-machine of a specified capacity had been so modified by the parties as to admit of the erection of a machine with a smaller capacity, plaintiff offered in evidence a letter-press copy of his letter modifying the contract, after notice to defendant to produce the original. *Held,* that the question whether defendant received the original letter was properly submitted to the jury.

2. CONTRACTS—PERFORMANCE—IRRELEVANT TESTIMONY.
   In an action for compensation for building an ice-machine under a contract, evidence that other ice-machines constructed by plaintiff for third parties were failures is not admissible, in the absence of testimony that such other machines were of the same capacity, size, and design, and exactly similar to that erected for defendant.

Appeal from trial term.

Action by Francis H. Boyer against Clark D. Rhinehart. Judgment for plaintiff. Defendant appeals. Affirmed.

Argued before OSBORNE and VAN WYCK, JJ.

*Hobbs & Gifford,* for appellant. *Johnson & Lamb,* for respondent.

OSBORNE, J. This action was brought to recover a balance due on a contract made between plaintiff and defendant, by which plaintiff was to furnish the designs and superintend the erection of an absorption ice-making machine on defendant's premises for a commission of 10 per cent. of the cost of the machine, which was estimated to cost $10,738.92. Four hundred dollars of said commission was to be paid during the progress of the work, and the balance on completion and obtaining the result of 50 tons of ice per day from said machine. The original contract was in writing, and indorsed on a detailed estimate of the cost of the work made by plaintiff. Plaintiff's contention was that, by the terms of a letter which he wrote to defendant, the original contract was so far modified as to provide that, in case the space allowed for freezing tanks should be too small to hold all the ice cans specified in the first agreement, then a daily production of ice in proportion to such reduction should be accepted as satisfactory for the daily working of the machine. Said letter further provided that plaintiff should also receive his disbursements for personal expenses, in addition to the 10 per cent. of the cost. Defendant denied the receipt of this letter, but it is plain from the evidence in the case that, owing to want of space, the parties agreed that but three freezing tanks should be used, instead of four, as originally proposed, the effect of which would be to reduce the capability of the machine to produce ice about 25 per cent.; or, in other words, to only call for a production of about 35 tons of ice per day instead of 50 tons. Plaintiff claimed to have completed his

work about June 10, 1890. It is admitted that the machine, when completed. never produced the quantity of ice called for by the specifications. Plaintiff claimed that this was due to defendant's failure to supply sufficient water to operate the machine, while the contention of the defendant was that the machine was inherently defective. Plaintiff had a verdict for the balance of his commissions remaining unpaid, and from the judgment entered thereon; and from an order denying a motion for a new trial, this appeal is taken.

The learned counsel for the defendant contends that the verdict was contrary to the evidence. We have carefully gone over all the testimony, and we fail to find any such preponderance in favor of the defendant as to make it our duty to interfere with the verdict of the jury. Plaintiff testified that the machine was properly constructed, and capable of producing, with 4 tanks, 50 tons of ice daily with ease; that the machine, as built, with only 3 tanks, and a supply of 140 gallons of water per minute, would produce $35\frac{3}{4}$ tons of ice each 24 hours; that defendant had told him, before the work was commenced, that he had to exceed 400 gallons of water a minute, obtained from a driven well inside the building that contained the tanks, but that, when plaintiff had a test made of the water produced from four combined wells after the completion of the work, the total product was only 28 192-231 gallons per minute. The testimony on the part of the defendant was that there was ample water, but that, when the machine was tested, it only produced 5 to 7 tons of ice in 24 hours, and that plaintiff's claim of lack of water was a mere pretext on his part to account for the failure of the machine to work as agreed, and that such failure was due to radical defects in its construction. We think it was the duty of the learned trial judge, on such a disputed state of facts, to submit the case to the jury. He charged the jury in part as follows: "On all the evidence in the case you are to say whether this machine, as constructed, if properly supplied with water, was capable of producing about thirty-six tons of ice per day. If the machine was capable of producing thirty-five or thirty-six tons of ice per day, then the plaintiff complied with his contract, and is entitled to be paid the balance of the ten per cent. If the machine could not produce thirty-five tons of ice per day, then the defendant is entitled to a verdict at your hands." No exception was taken to this portion of the charge; and, the jury having found in favor of the plaintiff, we find no ground for disturbing their verdict.

The learned counsel for the defendant moved to strike out the letter of plaintiff modifying the contract, which motion was denied, and an exception taken thereto. This exhibit was a press copy of a letter to defendant, which plaintiff testified that he either delivered or mailed to plaintiff. The copy was only offered after notice to defendant to produce the original, and failure to produce it. Defendant denied the receipt of the letter. We think the exception was not well taken, and that, under the evidence, it was for the jury to determine whether defendant had ever received it. Defendant himself testified, it may be added, that but three tanks were to be erected in the first instance, and that for the use of the fourth tank it would be necessary to erect a building. Defendant sought to show by the witnesses Jameson and Ochs that other absorption machines constructed by plaintiff for them respectively were failures, which evidence was, on objection, excluded, and exception was taken thereto. We think this evidence was properly excluded. It was not material to prove the results or lack of results obtained by any other machines erected by plaintiff, unless it first appeared that they were of the same capacity, size, and design, and exactly similar to the one which was the subject of the action. There was no such evidence offered in this case, and therefore the proposed testimony was inadmissible. *Sprout* v. *Newton*, 48 Hun, 209. We are of the opinion that the exception to the refusal to charge as requested at folio 200 was untenable. That proposition involved the necessity of plaintiff's establishing that the machine, with 4 tanks, was capable of pro-

ducing 50 tons of ice per day when supplied with plenty of, water, as a condition to his recovery. The omission of the fourth tank was acceded to by defendant, as he himself testified, so that the question of producing 50 tons per day was no longer in the case. The succeeding request of defendant's counsel to the same effect, substituting 35 for 50 tons as the daily product, was charged by the learned trial judge, and that was all the defendant was entitled to on that point. None of the other exceptions seem to us to call for discussion. We accordingly are of the opinion that the judgment and order denying a new trial should be affirmed, with costs.